# THE SUPREME COURT

OF

# OREGON.

## MARCH TERM, 1886.

[Filed March 9, 1886.]

## STATE v. MAH JIM.

CRIMINAL LAW—EVIDENCE—EXAMINATION OF WITNESS—BIAS.—In a criminal case, any question which tends to show a feeling or bias of the witness against the accused is competent. In a capital case, great latitude should be allowed on cross-examination, especially where the witness belongs to a class whose testimony general experience proves to be unreliable.

SAME.—Counsel should be allowed to pursue their own course in eliciting testimony, so long as they keep within reasonable bounds.

SAME.—In a criminal action, testimony that has any possible bearing upon the defendant's case should not be excluded.

MULTNOMAH COUNTY. Defendant appeals. Reversed and remanded for a new trial.

*J. H. Woodward,* for Appellant.

*John M. Glarin, District Attorney,* for the State.

By the COURT. We are of the opinion in this case that the circuit court should have permitted the appel-

lant's counsel to ask the witness Chin Wah the question " as to whether he had ever had a meeting since the killing of See Toy occurred—a meeting of the Masonic lodge—in which he had discussed and laid plans for the conviction of Mah Jim, and if each of the men therein named, witnesses for the state, were present at that meeting, and whether he did not participate in that discussion and in that action that night," and the following question : " Have you since the murder of that man, See Toy, participated in a meeting of the Masonic lodge, in which his murder was discussed, and at which time you laid the plans and discussed the means by which you could secure his [Mah Jim's] conviction ? And did you not, at the same meeting, threaten with vengeance any man who was a member of that body who would assist in any way, either directly or indirectly, the defendant to establish his innocence ? " Also the question " as to whether the notice on the bulletin-board that was torn down was not signed by the Masonic order, with its seal and stamp." The testimony sought by the two former questions would have had a direct tendency to show a feeling upon the part of the witness, and upon cross-examination great latitude should be allowed a party in a capital case. The testimony sought by the latter question would have had a tendency to show that said notice was published by authority of the lodge of which the witness was a member, and have entitled the appellant to prove its contents, it having been lost. Experience convinces every one that the testimony of Chinese witnesses is very unreliable, and that they are apt to be actuated by motives that are not honest. The life of a human being should not be forfeited on that character of evidence without a full opportunity to sift it thoroughly. The law will not tolerate a use of its forms to enable parties to accomplish selfish ends, and whenever there is a lurk-

ing suspicion, even, that such might be the object, their purpose should be closely scrutinized. The witnesses referred to may have been attempting to carry out a diabolical design—no one can tell what that class of persons may have in view. Their practices are very peculiar and mysterious, and the court, in no such case, should adopt a refined, technical rule as to the admission of evidence tending to show what their motives may be. To allow a conviction in so important an affair might result in the sacrifice of the life of an innocent person, which would be a damaging defamation upon judicial proceedings. It is not at all certain that the witness would have given a favorable answer to the appellant's question propounded to him, but the court cannot know that; it can only consider whether the evidence elicited would have been competent or not, and there is now no question in the mind of this court but that it would have been. If the two former questions had been answered in the affirmative, the testimony of the witness in chief would have been very materially discredited.

It was claimed by the respondent's counsel, upon the argument, that the substance of the question was asked the witness under another form, that was unobjectionable; but that cannot be conceded, nor would it be likely to have obviated the effect of the error if such had been the case. The appellant's counsel should have been allowed to pursue his own course in attempting to draw out proof, as long as he kept within reasonable bounds. It must clearly appear that an error is harmless in such a case to prevent a reversal of the judgment.

The appellant's counsel claimed that it was error in the court's making the remark it did upon overruling the motion to postpone the cause until the following morning; but as that is not likely to occur again, we

have not deemed it necessary to comment upon the point.

We deem it our duty to send the case back for a new trial upon the points referred to. The other errors assigned were not well taken.

The granting of a new trial in a criminal case creates an additional expense upon the county where it is had, and the occasion for it should be obviated as much as possible. We have heretofore suggested one means of avoiding the necessity of having to grant new trials in such cases. It is by pursuing a liberal course in the admission of testimony in the trial court. Testimony that has any possible bearing upon the defendant's case should not be excluded. Such a course would save time in the trial of a cause, and prevent the apprehension upon the part of the defendant that he had not had a fair and impartial hearing. Nor would it, in our opinion, be any more liable to allow guilty parties to escape punishment.

The judgment appealed from is reversed, and the case remanded for a new trial.